KING LAW OFFICES
CATHERINE KING   SBN 145940
2051 HILLTOP DR., STE A28
REDDING, CA 96002
PH: (530) 221 2640; FAX: 866 808 2223
EMAIL: king_catherine@att.net

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JOSE CORTEZ,

        Plaintiff,

v.

BAC HOME LOANS SERVICING, LP, A
SUBSIDIARY OF BANK OF AMERICA
FKA COUNTRYWIDE HOME LOANS
SERVICING; AMERICA'S WHOLESALE
LENDER; COUNTRYWIDE BANK;
RECONTRUST COMPANY;
AMERICHOICE, INC.; HAMED RASTI;
MASEHE HOTAKI; MORTGAGE
ELECTRONIC REGISTRATION SYSTEM
INC.; and DOES 1-20 inclusive,

        Defendants.
_____/

CASE NO.

COMPLAINT FOR:

1. FRAUD
2. BREACH OF FIDUCIARY DUTY
3. BREACH OF CONTRACT
4. BREACH OF IMPLIED COVENANT
   OF GOOD FAITH AND FAIR
   DEALING
5. NEGLIGENCE
6. VIOLATION OF CALIFORNIA
   ROSENTHAL ACT
7. VIOLATIONS OF CALIFORNIA
   BUSINESS & PROFESSIONS CODE §
   17200 et seq.
8. VIOLATION OF REAL ESTATE
   SETTLEMENT PROCEDURES ACT
   (12 U.S.C. § 2605 et seq.)
9. VIOLATION OF THE TRUTH IN
   LENDING ACT (15 U.S.C. § 1601 et
   seq.)
10. WRONGFUL FORECLOSURE

DEMAND FOR JURY TRIAL

Plaintiff Jose Cortez ("Plaintiff"), by and through his counsel, for his Complaint against Defendants BAC Home Loans, LP, A Subsidiary of Bank of America FKA Countrywide Home Loans Servicing ("BACHL"), America's Wholesale Lender ("America's Wholesale"), Countrywide Bank ("CB"), Recontrust Company ("Recontrust"), Americhoice, Inc. ("Americhoice"), Hamed Rasti ("Rasti"), Masehe Hotaki ("Hotaki"), and Mortgage Electronic Registration System Inc., ("MERS") (collectively "Defendants"), pleads as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction based on federal question under 28 U.S.C. §§ 1331 and 1367, 18 U.S.C. § 1964(c) and 15 U.S.C. § 1640(e).  This is an action asserting violations of federal statutes commonly known as the Truth In Lending Act ("TILA") (15 U.S.C. § 1601 et seq.), the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2601 et seq.) and its implementing regulations, 12 C.F.R. Part 226, et seq. ("Regulation Z"), with additional claims under California state law.  These claims all arise out of the same controversy and sequence of events.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the claim occurred in this judicial district.

3.      This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of California and the Eastern District and thus have sufficient contacts.

4.      Jurisdiction of this Court for the pendent state claims is authorized by Federal Rule of Civil Procedure 18(a).

5.      Defendants, and each of them, regularly engage in business in the State of California and regularly provide residential mortgage loans and related services to residents in the State of California who wish to obtain a residential mortgage loan, and who contact or are contacted by a loan officer for assistance in obtaining the necessary financing.

6.      Plaintiff brings this action against Defendants for damages and harm resulting from the Defendants' negligent, fraudulent and unlawful conduct concerning residential mortgage Loans transaction with the Plaintiff.

///

# PARTIES

7.    The residential property, subject to this Complaint, is located at 1900 Heather Court, Tracy, County of San Joaquin, State of California ("Property").

8.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this Complaint, Defendant BACHL is a diversified services corporations engaged primarily in residential mortgage loan servicing. Defendant BACHL represented to Plaintiff that it has the right to service Plaintiff's residential mortgage Loans and demand mortgage payments from Plaintiff, something that Plaintiff deny.

9.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this Complaint, Defendants America's Wholesale and CB are diversified financial marketing and/or services corporations engaged primarily in residential mortgage banking and/or related businesses.  Defendants America's Wholesale and CB are believed to be a residential mortgage lenders and were the original lenders for Plaintiff's residential mortgage Loans.

10.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this Complaint, Defendant Recontrust is a diversified financial marketing and/or services corporations engaged primarily in residential mortgage banking and/or related businesses. Defendant Recontrust is believed to be employed by Defendant BACHL to foreclose on Plaintiff's Property.

11.    Defendant MERS is a Delaware corporation engaged in the business of holding title to mortgages.  It does business in California as evidenced by inclusion of its name on the Deeds of Trust.  Defendant MERS was not registered to do business in California, and its agent for service of process resigned March 25, 2009.  The Deeds of Trust in this case states:

> "MERS is a separate corportion that is acting solely as a nominee
> for Lender and Lender's successor and assigns.  MERS is the
> beneficiary under this Security instrument.  The beneficiary of this
> security instrument is MERS (solely as nominee for Lender and
> Lender's successors and assigns) and the successors and assigns of
> MERS.  This security instrument secures to Lender (I) repayment
> of the Loan and all renewals, extensions and modifications of the
> Note; and (ii) the performance of Borrower's covenants and
> agreements under this Security Instrument and Note.  For this
> purpose, the Borrower irrevocably grants and conveys to Trustee,
> in trust, with power of sale the following described property.

12.    Defendant MERS' conduct, with respect to the Promissory Notes and the Deeds

of Trust in this case, is governed by "MERS Terms and Conditions" applicable to Defendants which state that:

> "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law."

13.     As a result of said express conditions, and pursuant to California Commercial Code §§ 1201(21), 3301, and 3309, Defendant MERS has no beneficial interest or right to enforce the terms of the Promissory Notes, because it is not in possession of the Promissory Notes, and has no authority to conduct a non-judicial foreclosure sale.

14.     At all times mentioned in this Complaint, Defendants Americhoice, Rasti, and Hotaki sold Plaintiff the mortgage involved herein.

15.     At all times mentioned in this Complaint, Defendant Hotaki was the loan officer who sold Plaintiff the mortgage at issue.  Defendant Hotaki held himself out to Plaintiff as a loan officer employed by Defendant Americhoice, and was acting within the course and scope of that employment when he came into contact with Plaintiff and sold Plaintiff the mortgage at issue.

16.     At all times mentioned in this Complaint, Defendant Rasti was a real estate Broker licensed by the State of California Department of Real Estate, and the Broker of record for Defendant Americhoice.

17.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 20, inclusive, and Plaintiff will amend this Complaint to allege such names and capacities as soon as they are ascertained.  Plaintiff is informed and believes, and thereon alleges that each of said fictitiously named Defendants are responsible in some manner for the wrongful acts complained of herein.

18.     Defendants, and each of them, at all relevant times herein were and still are agents for one another, and acting under the course and scope thereof, with knowledge and consent of

1   each other.

2                           **GENERAL ALLEGATIONS**

3          19.     This action arises out of a loan related activity to the Property of which the Plaintiff

4   is the rightful owner.

5          20.     Beginning in 1998 and continuing through 2009, lenders, including Defendants

6   America's Wholesale and CB, their agents, employees, and related servicers, including Defendants

7   BACHL and MERS, developed a scheme to rapidly infuse capital into the home mortgage lending

8   system by selling mortgages on the secondary market, normally three to five times, to create a

9   bankruptcy remote transaction.  For there to be a bankruptcy remote transaction, there must be a

10  true sale of the Notes and no interest can remain in the seller of the Notes.

11         21.     In a typical transaction, the original lender, called "Originator", in this case

12  Defendants America's Wholesale and CB would immediately upon closing, enter the Loans into

13  Defendant MERS' system, then sell the Loans to their "warehouse lender".  The "warehouse

14  lender" in this case is not known to Plaintiff. Since these transactions are hidden and not recorded,

15  Plaintiff will only be able to discover the name of the "warehouse lender" through Discovery.

16         22.     The Loans would then be sold by the "warehouse lender" to a "Special Investment

17  Vehicle" ("SIV").  The SIV would then sell the Loans to a "depositor".  Depositor would intern

18  pool these mortgages into large trusts, securitizing the pool and selling these securities on Wall

19  Street as mortgage backed securities, bonds, derivatives and insurances, often for twenty or thirty

20  times the original mortgage and sometimes fraudulently selling the same mortgage to multiple

21  investors.

22         23.     This securitized trust is governed by the common law trust rules of the prospectus

23  filed with the Securities and Exchange Commission and distributed to investors, and Internal

24  Revenue Code § 860A through 860G, better known as the Real Estate Mortgage Investment

25  Conduit ("REMIC") rules.

26         24.     The servicing of the pool is governed by a document titled "Pooling and Servicing

27  Agreement" ("PSA").  Plaintiff is informed and believes, and thereon alleges, that the REMIC

28  rules, the PSA and the prospectus require the notes and deeds of trust to be received by the trustee

1    on or before the closing date of the trust.

2         25.    Plaintiff's mortgage notes is a negotiable instrument under the Uniform

3    Commercial Code Article 3 and California Commercial Code § 3301 et seq.  To transfer

4    ownership of a mortgage notes, it must be properly endorsed by a person with authority to endorse

5    the Notes, physical delivery of the Notes and acceptance of the Notes.

6         26.    Plaintiff is informed and believes, and there on alleges that the mortgage notes

7    which is the subject of this action was not received by the trustee of the securitized trust at all, and

8    certainly not within a specified number of days of the trust's formation.

9         27.    Plaintiff is informed and believes and there on alleges that the mortgage notes and

10   deeds of trust, immediately after closing and recording, was entered into Defendant MERS and

11   the original notes were destroyed or warehoused, but not transferred, assigned or negotiated.  This

12   resulted in the stripping and voiding of the security interest in the notes and no interest was ever

13   transferred to the trust.

14        28.    In "selling" these mortgage notes on the secondary market, Defendants America's

15   Wholesale and CB, along with the warehouse lender and MERS, failed to follow the basic legal

16   requirements for the transfer of a negotiable instrument and an interest in real property, including,

17   but not limited to, written assignments of Plaintiff's Deeds of Trust, delivery of the Deeds of

18   Trust, endorsements of Plaintiff's Notes by the owner of Plaintiff's Notes, delivery of Plaintiff's

19   Notes and acceptance of Plaintiff's Notes.

20        29.    In fact, no interest in Plaintiff's Mortgage Notes, Deeds of Trust or Property was

21   ever legally transferred to any of the parties in the chain and that the Defendants are in effect straw

22   men, and parties without any standing before this Court to assert legal rights with respect to this

23   contractual transaction.

24        30.    Defendant BACHL thus could not have legally been given the right to service

25   Plaintiff's Loans.  Accordingly, Plaintiff alleges Defendant BACHL's representations to Plaintiff

26   that it has the right to service Plaintiff's Loans was and is, fraudulent and, since Defendant

27   BACHL, as a member of Defendant MERS, entered the information into the Defendant MERS

28   system, this fraud is known to Defendant BACHL.

31.     Defendant Recontrust, as agent for Defendant BACHL or other Doe Defendants, due to the failures noted above, was not legally entitled to initiate foreclosure proceedings against Plaintiff's Property and knew it was not legally entitled to initiate foreclosure proceedings.

32.     Further, as this process became more and more profitable, the underwriting requirements were repeatedly reduced to ensure more and more unsuspecting borrowers.  As Defendants America's Wholesale and CB reduced the underwriting requirements, it introduced the concept of "churning" loans involving a calculated plan to repeatedly refinance borrower's loans taking as much equity as possible, and artificially driving up housing prices.

33.     In this case, Defendants Americhoice and Rasti, in concert with Defendants America's Wholesale and CB placed Plaintiff into predatory loans with toxic terms, as detailed below, with the ultimate objective of forcing Plaintiff to refinance his loans in the near future for each of these Defendants' financial gain.

34.     Unlike the former traditional lending practices prior to the loan securitization process, Defendants America's Wholesale and CB profited from the sale of the loans, not from the loan investment itself.  The intent of these "lenders", such as Defendants America's Wholesale and CB, under the securitization process, was to trap as many unsuspecting borrowers as possible, Plaintiff included, regardless of the borrower's credit history or ability to pay, take as much of the borrower's equity as possible through high fees and sell the loans for a profit on the secondary market.

35.     Servicers, such as Defendant BACHL, would then obtain the servicing rights to the borrower's loans, Plaintiff's Loans included, profiting by taking a percentage of the amounts collected from the borrowers, collecting additional fees or initiating foreclosure proceedings. Plaintiff is informed and believes, and thereon alleges that Defendant BACHL is not paid to modify the terms of Plaintiff's Mortgage Notes, giving them a disincentive to work with borrowers, Plaintiff included, to negotiate a fair resolution.

36.     Defendants America's Wholesale and CB regularly trained, directed, authorized and/or participated with mortgage brokers, in this case, Defendants Americhoice and Rasti, to implement this scheme, giving them monetary incentives to violate the borrower's trust, Plaintiff

1  included.

2      37.    On or about March 08, 2006, Defendant Hotaki approached Plaintiff telling him

3  that he was the loan officer for Defendant Americhoice, and solicited him to refinance his

4  residence.

5      38.    Defendant Hotaki advised Plaintiff that he could get him the "best deal" and the

6  "best interest rates" available on the market.  Defendant Hotaki knew or should have known that

7  these assurances were false and misleading.

8      39.    When Plaintiff applied for these loans, he accurately described his income and

9  provided Defendant Hotaki with documentation of his income including tax returns, bank

10  statements, W-2s and 1099s.  Plaintiff's income was fraudulently overstated on the loan

11  application by the Defendant Hotaki, Plaintiff had an income of $8,433.41 per month and the loan

12  application stated Plaintiff had an income of $11,500.00 per month at the time the loans were

13  made.

14      40.    Plaintiff is now informed and believes, and thereon alleges that his income was

15  over stated on the loan application by Defendant Hotaki, without his knowledge or permission.

16      41.    Plaintiff did not receive any of the Loans or closing documents prior to the closing.

17  At closing, Plaintiff was not allowed to review the documents and was told simply to sign and

18  initial at various locations.  Plaintiff is informed and believes, and thereon alleges that Defendant

19  Hotaki falsified the loan application, inflating Plaintiff's actual income.  Plaintiff is informed and

20  believes, and thereon alleges that these misstatements were easily discoverable by Defendant

21  America's Wholesale's and CB's underwriters.  Unfortunately, the underwriters negligently failed

22  to discover the inaccuracies, to Plaintiff's detriment.

23      42.    Defendant Hotaki acted negligently on these transactions by over stating the

24  borrower's income in order to qualify him for this refinance transaction.  The standard housing

25  and debt to income ratios are 33% for housing and 38% for debt to income.  Based on the

26  Plaintiff's monthly income of $8,433.41 and using the minimum mortgage payments of $1,704.69

27  and $395.99, Plaintiff's ratio was 24.91% for housing and 30.74% for debt to income.  Using the

28  fully amortized and/or fully indexed mortgage payments of $3,521.37 and $507.14, Plaintiff's

1    ratio was 47.77% for housing and 53.66% for debt to income.  Using the overstated income of

2    $11,500.00 a month, Plaintiff's ratio was 18.27% for housing and 22.55% for debt to income.

3         43.    Defendant Hotaki further advised Plaintiff that if the Loans ever became

4    unaffordable, he would simply refinance it into an affordable loan, something Defendant Hotaki

5    knew or should have known was false and misleading.  Defendant Hotaki knew or should have

6    known that these misrepresentations were designed to induce Plaintiff to accept these loans to his

7    detriment.

8         44.    Plaintiff was not given a copy of any of the loans documents prior to closing as

9    required.  At closing, Plaintiff was only given a few minutes to sign the documents.  The notary

10   did not explain any of the Loans documents nor was Plaintiff allowed to review them.  Plaintiff

11   was simply told to sign and initial the documents provided by the notary.

12        45.    The facts surrounding these loans transaction were purposefully hidden to prevent

13   Plaintiff from discovering the true nature of the transaction and the documents involved therein.

14   Facts surrounding this transaction continue to be hidden from the Plaintiff to this day.

15        46.    Plaintiff is informed and believes, and thereon alleges that Defendant Hotaki

16   received $12,360.00 for the first loan and $579.38 for the second loan in yield spread premiums

17   for Plaintiff's loans.  The combined yield spread premiums of these loans was $12,939.38.

18        47.    Defendant Hotaki further advised Plaintiff that if the Loans ever became

19   unaffordable, he would simply refinance it into an affordable loan, something Defendant Hotaki

20   knew or should have known was false and misleading.

21        48.    Defendants Hotaki, Americhoice, and Rasti knew or should have known that these

22   false and material misrepresentations were designed to induce Plaintiff to accept these loans to his

23   detriment.

24        49.    Plaintiff was not given a copy of any of the loan documents prior to closing as

25   required.  At closing, Plaintiff was only given a few minutes to sign the documents.  The notary

26   did not explain any of the loan documents nor was Plaintiff allowed to review them.  Plaintiff was

27   simply told to sign and initial the documents provided by the notary.  Further, Plaintiff did not

28   receive the required copies of a proper notice of cancellation.

50.     The facts surrounding these loans transaction were purposefully hidden to prevent Plaintiff from discovering the true nature of the transaction and the documents involved therein. Facts surrounding this transaction continue to be hidden from the Plaintiff to this day.

51.     On or about May 3, 2006, Plaintiff completed the Loans on the Property. The terms of the Loans were memorialized in a Promissory Notes, which was secured by a Deeds of Trust on the Property.  The Deeds of Trust identified CTC Real as Trustee, and Defendants America's Wholesale and CB as Lender.

52.     The Deeds of Trust also identified Defendant MERS as nominee for the Lender and Lender's successors and assigns, and the beneficiary.  Defendant MERS has no standing in this forum.  It is not licensed to be and/or act as a nominee or a beneficiary of any of the Defendants, nor does its Terms and Conditions, enumerated above, permit Defendant MERS to act in such capacity.  Defendant MERS was developed to be a document storage company, not a nominee or a beneficiary of any of the Defendants.  Therefore, the Deeds of Trust must fail. Further, Defendant MERS was not licensed to do business in the State of California, and was not registered with the State of California at the inception of these Loans involved herein.

53.     Subsequent to the closing of Plaintiff's residential mortgage Loans, Defendant BACHL began demanding mortgage payments.  However, Defendant BACHL did not give owner notice that it acquired servicing rights, as required under 12 U.S.C § 2605(c).

54.     Plaintiff remitted payments demanded by Defendant BACHL.  The payments demanded monthly ranged from $2,100.68 to $4,028.51.  Currently the balance of the mortgage has risen to over $467,698.54.

55.     On or about April 24, 2008, a Notice of Default was filed in San Joaquin County, California, by Defendant Recontrust.  This notice, however, identified  Defendant Recontrust as either the original Trustee (which it was not), the substitute Trustee or acting as agent for the Beneficiary under the Deeds of Trust.  The notice failed to explain when, how or under what authority Defendant Recontrust became a substitute Trustee or an agent for the Beneficiary.

56.     On or about July 29, 2009, Defendant Recontrust noticed the Trustee Sale of the Property.  This notice now identified Recontrust as the duly appointed Trustee under the Deeds of

1   Trust.  Again, the notice failed to explain when, how or under what authority Defendant

2   Recontrust was appointed Trustee.  Plaintiff alleges both the Notice of Default and the Notice of

3   Trustee Sale are defective.

4         57.    On or about September 21, 2009, a Qualified Written Request under RESPA

5   ("QWR" or "Request") was mailed to Defendant BACHL.  The QWR properly identified the

6   Plaintiff, identified the Loans in question, a statement of reasons for Plaintiff's belief that the

7   account was in error due to fraud at the inception of these Loans, improper charges added to the

8   Loans, the improper increase in the principal balance of Plaintiff's Loans, and requested specific

9   servicing related information from Defendant BACHL.  The QWR included a demand to rescind

10   the loans under the TILA provisions.  Defendant BACHL has yet to properly respond to this

11   Request.

12         58.    Plaintiff alleges that none of the named Defendants is a "person entitled to

13   enforce" the security interest under the Notes and the Deeds of Trust, as defined in California

14   Commercial Code § 3301.  Defendants America's Wholesale and CB, in concert with other Doe

15   Defendants sold Plaintiff's home loans to other financial entities, which "pooled" large numbers of

16   loans, put them into trusts, and sold securities based on Plaintiff's loans.  None of the named

17   Defendants own the loans subject to this action, and none are entitled to enforce the security

18   interest.

19         59.    Defendants America's Wholesale and CB regularly approved loans to unqualified

20   borrowers, Plaintiff included, and implemented unlawful lending practices.  Further, Defendants

21   America's Wholesale and CB employed brokers and loan officers, including Defendants

22   Americhoice, Rasti, and Hotaki, who were paid commissions based on the volume of loans they

23   sold to consumers, Plaintiff included.  Defendants America's Wholesale's and CB's, loan officers

24   received a greater commission or bonus for placing borrowers in loans with relatively high yield

25   spread premiums.  As such, borrowers, Plaintiff included, were steered and encouraged into loans

26   with terms unfavorable to them, or loans which the borrowers, Plaintiff included, were not

27   qualified to obtain.

28         60.    Defendant BACHL, in concert with other Doe Defendants, are now attempting to

obtain putative legal title to Plaintiff's Property without having established that any of them was ever a "person entitled to enforce" the security interest under the Notes and the Deeds of Trust.

61.    Each of the named Defendants, in fact, is not a "person entitled to enforce" said interest.  No legal transfer of the Mortgage Notes, Deeds of Trust or any other interest in Plaintiff's Property was ever effected that gave any of the Defendants the right to be named a trustee, mortgagee, beneficiary or an authorized agent of trustee, mortgagee or beneficiary of Plaintiff's Mortgage Notes, Deeds of Trust or any other interest in Plaintiff's Property.

62.    Plaintiff entered into loan transaction with Defendants America's Wholesale and CB, which was subject to finance charges, and which was initially payable to Defendants America's Wholesale and CB under the Deeds of Trust.

63.    Plaintiff's Loans are subject to TILA provisions and its implementing regulations, 12 C.F.R. Part 226 ("Regulation Z").  TILA grants consumers a three-day right to cancel certain types of real estate loan transactions.  This three-day right to cancel applies to Plaintiff's Loans with the Defendants.

64.    When the loans were consummated, Plaintiff did not receive the required documents and disclosures, including, but not limited to the TILA disclosure, and the required number of copies of the Notice of Right to Cancel stating the date that the rescission period expires.

65.    Under TILA and Regulation Z, Defendants were required to clearly and conspicuously disclose the "amount financed" and the "finance charge," among other things, in connection with the Loans.

66.    Defendants America's Wholesale and CB and Rasti as agent of the Lender, were required to provide Plaintiff with said disclosures, but failed to do so.

67.    Further, Defendant BACHL fraudulently added costs and charges to the payoff amount of the Notes that were not justified or proper under the terms of the Notes or the law.

68.    In pursuing the non-judicial foreclosure, Defendants BACHL, Recontrust and other Doe Defendants, represented that they have the right to payment under the Mortgage Notes, payment of which was secured by the Deeds of Trust.  Whereas in fact, Defendants BACHL,

1   Recontrust and other Doe Defendants, and each of them, are not the real parties in interest because

2   they are not the legal trustee, mortgagee or beneficiary, nor are they authorized agents of the

3   trustee, mortgagee or beneficiary, nor are they in possession of the Notes, or holders of the Notes,

4   or non-holders of the Notes entitled to payment, as required by the California Commercial Code

5   §§ 3301 and 3309, and California Civil Code § 2924 et seq.  Therefore, Defendants BACHL,

6   Recontrust and other Doe Defendants instituted foreclosure proceedings against Plaintiff's

7   Property without rights under the law.

8        69.    Named Defendants engaged in a civil conspiracy where by they secreted the nature

9   of the misdeeds alleged herein, the roles and identities of the various entities that were purportedly

10  handling the Loans at any given time, and the transfers of the Loan documents and negotiable

11  instruments that are the subject of this action.

12       70.    Defendant Hotaki misrepresented material facts at the inception of the loans with

13  the intent of forcing Plaintiff to either pay large sums of money to the Defendants Americhoice,

14  Rasti, Hotaki, America's Wholesale and CB to which they were not entitled, or to abandon the

15  Property to a foreclosure sale, resulting in profit for all the named Defendants.

16       71.    Defendant BACHL misrepresented material facts regarding its right to service

17  Plaintiff's Loans and demanded payments from Plaintiff, with the intent of forcing Plaintiff to pay

18  large sums of money to the Defendant BACHL to which it was not entitled, or to abandon the

19  Property to a foreclosure sale, resulting in profit for Defendant BACHL.

20       72.    The misrepresentations and allegations stated herein were all discovered within the

21  past year, such that any applicable statute of limitations are extended or should be extended

22  pursuant to the equitable tolling doctrine or other equitable principles.  Even through the exercise

23  of reasonable diligence, Plaintiff would still not have been able to learn of or file his claim on

24  time.

25                         **FIRST CAUSE OF ACTION**

26                              **FRAUD**

27                   **(Against all Defendants)**

28       73.    Plaintiff incorporates here each and every allegation set forth above.

74.    As alleged herein, Defendants Hotaki, Rasti, and Americhoice made false representations to Plaintiff regarding material facts, including but not limited to, interest rates, financing options, availability of refinancing, and Plaintiff's qualification for these loans, at the inception of this transaction, designed to fraudulently induce Plaintiff to enter into this transaction.

75.    When Plaintiff applied for these loans, he accurately described his income and provided Defendant Hotaki with documentation of his income, including tax returns, bank statements, W-2s and 1099s.  At the time these loans were made, Plaintiff's income was approximately $8,433.41 per month, however Plaintiff's loan application stated he had an income of $11,500.00 per month.  Plaintiff is now informed and believes, and thereon alleges that his income was overstated on the loan application by Defendant Hotaki, without his knowledge or permission.  Plaintiff is informed and believes, and thereon alleges that Defendants America's Wholesale's and CB's underwriters knew or should have known of the fraudulent information on the loan application but approved the loans anyway.

76.    Defendant Hotaki advised Plaintiff that he could get him 100% financing for his loan.  However, Defendant Hotaki actually sold Plaintiff two predatory loans.  The first loan, in the amount of $412,000.00, carried a teaser rate of 7.375% for the two months, that adjusted to 9.95% interest rate, based on MTA index plus 3.50%, negatively amortized up to 115% ,Plaintiff's initial monthly payments for the loan was $1,325.15.  The Second loan, in the amount of $51,500.00, carried a rate of 8.50%, Plaintiff's initial monthly payments for the loan was $395.99.  With a five(5)year prepayment penalty and a balloon payment in the amount of $40,608.85.

77.    As alleged herein, Defendants America's Wholesale and CB regularly trained, directed, authorized and participated with mortgage brokers to implement this fraudulent scheme, training brokers and loan officers, including Defendants Hotaki, Rasti, and Americhoice to direct unsuspecting borrowers, Plaintiff included, into toxic loans, giving brokers direction as to which toxic loans to direct borrowers into, directing their underwriters to approve loans to these unqualified borrowers and giving the brokers and loan officers monetary incentives to violate the

1    borrower's trust.

2    78.    When Plaintiff applied for these loans, he accurately described his income and

3    provided Defendant Hotaki with documentation of his income including tax returns, bank

4    statements, W-2s and 1099s.  Plaintiff's income was fraudulently overstated on the loan

5    application by the Defendant Hotaki, Plaintiff had an income of $8,433.41 per month and the loan

6    application stated Plaintiff had an income of $11,500.00 per month at the time the loans were

7    made.

8    79.    Plaintiff is now informed and believes, and thereon alleges that his income was

9    over stated on the loan application by Defendant Hotaki, without his knowledge or permission.

10    80.    Plaintiff did not receive any of the Loans or closing documents prior to the closing.

11    At closing, Plaintiff was not allowed to review the documents and was told simply to sign and

12    initial at various locations.  Plaintiff is informed and believes, and thereon alleges that Defendant

13    Hotaki falsified the loan application, inflating Plaintiff's actual income.  Plaintiff is informed and

14    believes, and thereon alleges that these misstatements were easily discoverable by Defendant

15    America's Wholesale's and CB's underwriters.  Unfortunately, the underwriters negligently failed

16    to discover the inaccuracies, to Plaintiff's detriment.

17    81.    Defendant Hotaki acted negligently on these transactions by over stating the

18    borrower's income in order to qualify him for this refinance transaction.  The standard housing

19    and debt to income ratios are 33% for housing and 38% for debt to income.  Based on the

20    Plaintiff's monthly income of $8,433.41 and using the minimum mortgage payments of $1,704.69

21    and $395.99, Plaintiff's ratio was 24.91% for housing and 30.74% for debt to income.  Using the

22    fully amortized and/or fully indexed mortgage payments of $3,521.37 and $507.14, Plaintiff's

23    ratio was 47.77% for housing and 53.66% for debt to income.  Using the overstated income of

24    $11,500.00 a month, Plainitff's ratio was 18.27% for housing and 22.55% for debt to income.

25    82.    As alleged herein, Defendant BACHL misrepresented to Plaintiff that BACHL has

26    the right to collect monies from Plaintiff on its behalf or on behalf of others when Defendant

27    BACHL had no legal right to collect such monies.

28    83.    As alleged herein, Defendant MERS misrepresented to Plaintiff on the Deeds of

1    Trust that it is a qualified beneficiary with the ability to assign or transfer the Deeds of Trust

2    and/or the Notes and/or substitute trustees under the Deeds of Trust. Further, Defendant MERS

3    misrepresented that it followed the applicable legal requirements to transfer the Notes and Deeds

4    of Trust to subsequent beneficiaries.

5    84.    As alleged herein, Defendant Recontrust misrepresented to Plaintiff that

6    Recontrust was entitled to enforce the security interest and has the right to institute a non-judicial

7    foreclosure proceeding under the Deeds of Trust when they filed a Notice of Default on April 24,

8    2008. In fact, Defendant Recontrust was not a trustee, mortgagee or beneficiary, nor are they

9    authorized agents of the trustee, mortgagee or beneficiary, nor are they in possession of the Notes,

10   or holders of the Notes, or non-holders of the Notes entitled to payment, as required by California

11   Commercial Code §§ 3301 and 3309. As a result, Defendant Recontrust did not have the right to

12   initiate foreclosure proceeding herein under California Civil Code § 2924 et seq.

13   85.    These material representations made by the named Defendants were false.

14   86.    The named Defendants knew that these material representations were false when

15   made, or these material representations were made with reckless disregard for the truth.

16   87.    The named Defendants intended that Plaintiff rely on these material

17   representations.

18   88.    Plaintiff reasonably relied on said representations.

19   89.    As a result of Plaintiff's reliance, he was harmed and suffered damages. Plaintiff's

20   reliance on Defendants' false material representations was a substantial factor in causing Plaintiff

21   harm.

22   90.    Additional evidentiary facts constituting fraud in this matter are within named

23   Defendants' knowledge and possession and have been secreted by named Defendants.

24   91.    These named Defendants, and each of them, conspired together to perpetrated the

25   fraud alleged herein over the course of several years.

26   92.    These named Defendants are guilty of malice, fraud and/or oppression, as defined

27   in California Civil Code § 3294. The named Defendants' actions were malicious and done

28   willfully, in conscious disregard of the rights and safety of Plaintiff in that the actions were

calculated to injure Plaintiff. As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

**(Against Defendants Hotaki, Americhoice, America's Wholesale, CB, and Rasti)**

93.     Plaintiff incorporates here each and every allegation set forth above.

94.     Defendants Hotaki, Rasti, Americhoice, America's Wholesale, and CB were all agents for the Plaintiff by express and implied contract and by operation of law.

95.     Defendants America's Wholesale and CB gained a fiduciary duty to Plaintiff by directly ordering, authorizing and participating in Defendants Hotaki, Americhoice and Rasti tortious conduct.

96.     Defendants America's Wholesale and CB regularly trained, directed, authorized and participated with mortgage brokers to implement this scheme, including giving them monetary incentives to violate the borrower's trust.

97.     Plaintiff hired Defendants Americhoice, Rasti, and Hotaki as his agents for the purpose of obtaining a Loan to refinance the Property.

98.     Pursuant to an agreement between the parties, Plaintiff agreed to pay Defendants Americhoice, Rasti, and Hotaki a commission from the proceeds of his Loans and agreed to pay Defendants America's Wholesale and CB substantial fees for his loans.

99.     Defendants Americhoice, Rasti, and Hotaki, by and through their agents, and Defendants America's Wholesale and CB through their interjection into the brokerage of the loans as described above, owed a fiduciary duty to the Plaintiff to act primarily for his benefit, to act with proper skill and diligence, and not to make a personal profit from the agency at the expense of their principal, the Plaintiff.

100.     As Plaintiff's agents, Defendants Hotaki, Rasti, Americhoice, America's Wholesale, and CB owed Plaintiff a duty of loyalty and a duty to deal fairly with him at all times.

101.     Defendants Hotaki, Rasti, Americhoice, America's Wholesale, and CB willfully or

1    recklessly breached their fiduciary duty and duty of loyalty by obtaining mortgage loans for him

2    that had unfavorable terms and that he could not ultimately afford, by not disclosing the negative

3    consequences of said loans, by securing a secret profit for themselves, by not properly complying

4    with TILA and RESPA requirements, and by engaging in unfair business practices.

5        102.    Defendants America's Wholesale and CB, through their own actions, interfered

6    with Defendants Hotaki's and Rasti's fiduciary obligations by offering Defendants Rasti and

7    Hotaki, respectively, training, direction and incentives to breach their fiduciary duty by means of

8    creating and participating in a scheme that created an illusion to consumers that they are being

9    informed of all of the material facts, when in fact they are not.

10       103.    Defendant Rasti, through his actions, interfered with Defendant Hotaki's fiduciary

11   obligations by offering Defendant Hotaki training, direction and incentives to breach his fiduciary

12   duty by means of creating and participating in a scheme that created an illusion to consumers that

13   they are being informed of all of the material facts, when in fact they are not.

14       104.    Plaintiff has been damaged as a result of Defendants' breach, and is entitled to

15   actual damages.

16       105.    Defendants consciously disregarded Plaintiff's rights, deliberately breaching their

17   respective fiduciary duties, showing willful misconduct, malice, fraud, wantonness, oppression

18   and entire want of care, thus authorizing the imposition of punitive damages pursuant to

19   California Civil Code § 3294.

20                        **THIRD CAUSE OF ACTION**

21                        **BREACH OF CONTRACT**

22                                **OR**

23                        **IN THE ALTERNATIVE**

24                        **RESCISSION OF CONTRACT**

25   **(Against Defendants Hotaki, Rasti, Americhoice, America's Wholesale, and CB)**

26       106.    Plaintiff incorporates here each and every allegation set forth above.

27       107.    Plaintiff entered into an brokerage agreement with Defendants Hotaki, Rasti, and

28   Americhoice whereby Defendants, in a fiduciary manner, promised to use reasonable skill and

care in the performance of the contract, and to deal with Plaintiff honestly and in good faith. Plaintiff agreed to pay Defendants Americhoice, Hotaki, and Rasti a commission for their services.

108.    Plaintiff fully performed his duties under the contract with Defendants Hotaki, Rasti, and Americhoice.

109.    However, as alleged below, Defendants Hotaki, Rasti, and Americhoice breached their brokerage agreement with Plaintiff when they made false representations to Plaintiff regarding material facts, including but not limited to, mortgage payments, availability of refinancing, and Plaintiff's qualification for these loans.  Each representation was designed to fraudulently induce Plaintiff to enter into this transaction in breach of their contract and fiduciary obligation to Plaintiff.

110.    Plaintiff entered into an residential mortgage agreement with Defendants America's Wholesale, CB, Hotaki, Rasti, and Americhoice whereby Defendants, promised to use reasonable skill and care to provide Plaintiff with an afford able fixed rate residential mortgage loan and to deal with Plaintiff honestly and in good faith.  Plaintiff agreed to pay Defendants America's Wholesale, CB, Americhoice, Hotaki, and Rasti substantial fees and commissions for their services.

111.    Plaintiff fully performed his duties under the contract with Defendants Hotaki, Rasti, America's Wholesale and CB.

112.    Defendants Hotaki, Rasti, America's Wholesale, and CB breached their agreement with Plaintiff when they sold Plaintiff two predatory loans with toxic terms.  Further, Defendants Hotaki, Rasti, America's Wholesale, and CB breached their agreement with Plaintiff by failing to exercise reasonable efforts and due diligence as promised, thus failing to provide Plaintiff with affordable loans.  Defendants Hotaki, Rasti, America's Wholesale, and CB also breached their agreement with Plaintiff by committing wrongful acts, including but not limited to, intentionally or negligently failing to obtain payment and interest rates as promised, failing to submit an accurate loan application, failing to supervise, failing to provide loan documents for Plaintiff's review prior to closing, and failing to explain the loan documents to the Plaintiff.  Defendants

1  further breached

2  their duties when they failed to refinance the mortgage as promised, resulting in Plaintiff's

3  payments increasing substantially shortly after the Loan agreements were signed.

4      113.    This breach by the Defendants Hotaki, Rasti, America's Wholesale, and CB has

5  sent Plaintiff into foreclosure instead of financing his mortgage as agreed.

6      114.    **IN THE ALTERNATIVE**, no contract existed between Plaintiff and Defendants

7  Hotaki, Rasti, America's Wholesale and CB because of a mutual mistake relating to the basic or

8  material contractual terms alleged above.  This mutual mistake was not caused by Plaintiff's

9  neglect of his legal obligations.  Defendants Hotaki, Rasti, America's Wholesale, and CB were

10 aware of Plaintiff's mistaken belief with respect to the material terms alleged above, and unfairly

11 utilized that mistaken belief in a manner that enabled them to take advantage of the Plaintiff.

12     115.    As a result of Defendants' wrongful conduct, Plaintiff has suffered various

13 damages and injuries according to proof at trial.

14     116.    Plaintiff further seeks rescission of these loans, restitution, disgorgement of sums

15 wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as

16 the Court may deem just and proper.

17                           **FOURTH CAUSE OF ACTION**

18        **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

19              **(Against Defendants Hotaki, Rasti, America's Wholesale, and CB)**

20     117.    Plaintiff incorporates here each and every allegation set forth above.

21     118.    A duty of good faith and fair dealing was implied by law into the contract at issue

22 in this action at its inception.  Defendants Hotaki's, Rasti's, America's Wholesale's, and CB's

23 duties of good faith and fair dealing included, but were not limited to, the following: (1)

24 Defendants had a duty to pay at least as much regard to Plaintiff's financial interests as to

25 Defendants' financial interests; (2) Defendants had a duty to comply with all applicable laws in the

26 State of California; (3) Defendants agreed to act in good faith and deal fairly with Plaintiff when

27 they entered into the mortgage and accepted payments from Plaintiff.  Defendants Hotaki, Rasti,

28 America's Wholesale, and CB thereby assumed obligations of good faith and fair dealing toward

1    Plaintiff and thereby agreed to abide by such obligations.

2        119.    Nevertheless, Defendants Hotaki, Rasti, America's Wholesale, and CB breached

3    the implied duty of good faith and fair dealing owed to Plaintiff by, among other things,

4    performing acts and failing to act as alleged herein, and by failing to perform the duties

5    specifically enumerated herein.

6        120.    Defendants Hotaki, Rasti, America's Wholesale, and CB further breached the duty

7    of good faith and fair dealing by:

8        a.    Failing to pay at least as much regard to Plaintiff's interests as to Defendants'

9             interests;

10       b.    Failing to disclose to Plaintiff the true nature of these loans that are the subject of

11            this action;

12       c.    Failing to give Plaintiff the requisite notice and disclosures;

13       d.    Directing Plaintiff into toxic loans.

14       121.    In the absence of a reasonable basis for doing so, and with full knowledge and

15   reckless disregard of the consequences, Defendants Hotaki, Rasti, America's Wholesale, and CB

16   acted in bad faith toward Plaintiff by, among other things, failing to comply with all applicable

17   laws.

18       122.    Plaintiff is informed and believes, and thereon alleges that Defendants Hotaki,

19   Rasti, America's Wholesale, and CB have a pattern and practice of similar bad faith conduct

20   toward other borrowers who are similarly situated.

21       123.    As a proximate result of Defendants Hotaki's, Rasti's, America's Wholesale's, and

22   CB's breaches of the covenant of good faith and fair dealing alleged herein, Plaintiff has suffered

23   damages, incurred attorneys' fees and costs to recover the Property, suffered a loss of reputation

24   and goodwill, suffered emotional distress, and suffered other economic losses and damages in

25   amounts not yet fully ascertained but within the jurisdiction of this Court.

26       124.    Defendants Hotaki, Rasti, America's Wholesale, and CB pursued said course of

27   conduct intentionally and maliciously and in conscious disregard of the rights of the Plaintiff.

28   Further, Defendants Hotaki's, Rasti's, America's Wholesale's, and CB's refusal to follow through

with their duty to assist Plaintiff was made with the intent to intimidate, vex and harass Plaintiff so as to discourage him from pursuing his legal rights under the mortgage law.  In order to deter such conduct of Defendants Hotaki, Rasti, America's Wholesale, and CB in the future, and to prevent repetition thereof as a practice, by way of punishment and as example, Plaintiff prays that exemplary damages be awarded according to proof at trial pursuant to California Civil Code § 3294.

125.    Defendants America's Wholesale's and CB's officers, directors and/or managing agents failed to adequately supervise, train and direct its employees, and employing them with conscious disregard for the safety of Plaintiff and thereafter ratified the conduct of its employees. Defendants America's Wholesale and CB on information and belief, implemented policies and procedures which permitted and encouraged the conduct of its employees and agents in this case and as such said Defendants consented, acquiesced, approved and ratified the behavior and conduct of its employees, including Does 1 through 20, and each of them in causing harm to Plaintiff.  Plaintiff is thus entitled to recover punitive damages from Defendants pursuant to California Civil Code § 3294, in an amount according to proof.

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE**

**(Against all Defendants)**

126.    Plaintiff incorporates here each and every allegation set forth above.

127.    Defendants Americhoice, Rasti, and Hotaki owed a duty to the Plaintiff to exercise reasonable skill and care in the exercise of the agency duties for the Plaintiff's benefit and best interest and to perform acts as brokers of loans in such a manner as to not cause Plaintiff harm.

128.    Defendants Americhoice, Rasti, and Hotaki breached their duty to the Plaintiff when they used their knowledge and skill to direct Plaintiff into loans for which he was not qualified based upon his income as stated in the documents provided to Defendants Americhoice, Rasti, and Hotaki.

129.    Defendants Americhoice, Rasti, and Hotaki further breached their duty to Plaintiff by directing him into two loan transactions that they may not have otherwise qualified for by

1 industry standards, resulting in excessive fees paid by the Plaintiff and payments in excess of

2 Plaintiff's ability to pay.

3    130.    Defendants America's Wholesale and CB directly ordered, authorized and

4 participated in Defendants Americhoice's, Rasti's, and Hotaki's conduct.  As a result, Defendants

5 America's Wholesale and CB owed a duty to the Plaintiff to perform acts in such a manner as to

6 not cause Plaintiff harm.  In addition, Defendants America's Wholesale and CB breached their

7 duty of care to the Plaintiff when they failed to make the required disclosures to the Plaintiff,

8 failed to maintain the original Mortgage Notes, and failed to properly assign or transfer the

9 negotiable instrument(s).

10    131.    Defendant BACHL owed Plaintiff a duty of due care.  Defendant BACHL

11 breached its duty of care to the Plaintiff when it took payments to which it was not entitled,

12 charged fees it was not entitled to charge, and wrongfully made or otherwise authorized negative

13 reporting of Plaintiff's creditworthiness to various credit bureaus.  Additionally, BACHL had a

14 statutory duty to Plaintiff to properly respond to Plaintiff's Qualified Written Request pursuant to

15 12 U.S.C. § 2605(e), and to give Plaintiff notice of the transfer of the servicing rights to his loans

16 pursuant to 12 U.S.C. § 2605(c).

17    132.    Defendant MERS owed Plaintiff a duty to perform its administrative function

18 recording, maintaining and transferring documents as it relates to Plaintiff's loans in a manner not

19 to cause Plaintiff harm.  Defendant MERS breached its duty to Plaintiff when it failed to receive,

20 maintain or transfer the negotiable instrument related to Plaintiff's loans, communicated false

21 information to others regarding Plaintiff's loans, and authorized others to collect payments on

22 Plaintiff's mortgage and commence foreclosure proceedings.

23    133.    As a result of Defendants' negligence, Plaintiff suffered and continues to suffer

24 harm, and is entitled to damages according to proof and/or other relief as the Court deems just.

25 ///

26 ///

27 ///

28 ///

**SIXTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA ROSENTHAL ACT**

**CALIFORNIA CIVIL CODE § 1788 et seq.**

**(Against Defendant BACHL)**

134.    Plaintiff incorporates here each and every allegation set forth above.

135.    Plaintiff alleges that Defendant BACHL is a debt collector within the meaning of the Rosenthal Act in that they regularly, in the course of their business, on behalf or themselves or others, engage in the collection of debt.

136.    Defendant BACHL used unfair and unconscionable means to collect a debt not owed to Defendant BACHL or its principal by repeatedly, over the past year,  sending threatening and deceptive letters and making threatening and deceptive phone calls to Plaintiff demanding payment.

137.    Further, over the past year, Defendant BACHL repeatedly made false reports to credit reporting agencies about Plaintiff's credit standing, falsely stating the amount of Plaintiff's mortgage debt, falsely stating that a debt was owed to Defendant BACHL, and falsely stating Plaintiff's payment history.

138.    Further, Defendant BACHL increased the amount of Plaintiff's mortgage debt by stating amounts not permitted by law or contract, including, but not limited to, excessive service fees, attorneys' fees, and late charges.

139.    Defendant BACHL's actions have caused Plaintiff actual damages, including, but not limited to, severe emotional distress, such as loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression.

140.    As a result of Defendant BACHL's violations, Plaintiff is entitled to statutory damages in an amount to be determined at trial, actual damages according to proof, and costs and reasonable attorneys' fees.

///

///

///

**SEVENTH CAUSE OF ACTION**

**VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.**

**(Against all Defendants)**

141.    Plaintiff incorporates here each and every allegation set forth above.

142.    Defendant BACHL's violation of the Rosenthal Act, RESPA, its negligence, fraud and illegal foreclosure activities, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

143.    Defendants America's Wholesale's violation of TILA, RESPA, its negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

144.    Defendants CB's violation of TILA, RESPA, its negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

145.    Defendant MERS' negligence, fraud, and illegal foreclosure activities, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

146.    Defendant Recontrust's negligence, fraud and illegal foreclosure activities, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

147.    Defendant Americhoice's negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

148.    Defendant Rasti's negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and

1  Professions Code § 17200 et seq.

2      149.    Defendant Hotaki's negligence, breach of fiduciary duty, fraud, breach of contract

3  and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute

4  unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and

5  Professions Code § 17200 et seq.

6      150.    As a result of Defendants' wrongful conduct, Plaintiff has suffered various

7  damages and injuries according to proof at trial.

8      151.    Plaintiff seeks injunctive relief enjoining Defendants from engaging in the unfair

9  business practices described herein.

10      152.    Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs

11  of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and

12  proper.

13                        **EIGHTH CAUSE OF ACTION**

14       **VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT**

15                      **12 U.S.C. § 2605 et seq.**

16        **(Against Defendants BACHL, America's Wholesale, and CB)**

17      153.    Plaintiff incorporates here each and every allegation set forth above.

18      154.    The Loan transactions between Plaintiff and Defendants are mortgage loans

19  covered by RESPA.

20      155.    A violation of RESPA is also made unlawful under California state law by

21  Financial Code § 50505, which states: "[a]ny person who violates any provision of [RESPA] or

22  any regulation promulgated thereunder, violates this division [California Residential Mortgage

23  Lending Act]."

24      156.    Plaintiff is not certain at this time exactly which of Defendants was actually the

25  servicer of the Loans at any given time.  Pursuant to 12 U.S.C. §§ 2605(b) and 2605©, Defendants

26  America's Wholesale, CB and BACHL had a statutory obligation to notify Plaintiff, within 15

27  days, of the assignment, sale, or transfer of the servicing rights to Plaintiff's loans.  Defendants

28  America's Wholesale, CB, and BACHL failed to provide Plaintiff notice of the assignment, sale,

1    or transfer of servicing rights to Plaintiff's Loans.

2         157.    Defendants America's Wholesale and CB violated RESPA at the time of the

3    closing of these Loans subject to this Complaint by failing to correctly and accurately comply with

4    the disclosure requirements of 12 U.S.C § 2601 et seq. and Regulation X.

5         158.    Plaintiff has served Defendant BACHL a QWR that identified Plaintiff's name, two

6    loan numbers, and a statement of reasons for Plaintiff's belief that the loans were in error.

7    Plaintiff's QWR, among other things, also sought rescission of these loans and requested

8    production of service related documents. Defendant BACHL violated RESPA, 12 U.S.C.

9    §2605(e)(2), by failing and refusing to provide a proper written explanation or response to

10   Plaintiff's QWR.

11        159.    Defendants America's Wholesale and CB further violated 12 U.S.C. § 2607 by

12   receiving "kickbacks" or referral fees disproportional to the work performed.

13        160.    Defendant BACHL violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to

14   make appropriate corrections to Plaintiff's account in response to the QWR, including the

15   crediting of any late charges or penalties and failing to transmit written notice of such corrections

16   to Plaintiff.

17        161.    Defendant BACHL violated RESPA, 12 U.S.C. § 2605(e)(2), by refusing to cease

18   its collection efforts after receiving Plaintiff's QWR.

19        162.    Defendant BACHL violated RESPA, 12 U.S.C. § 2605(e)(3), by providing

20   information to consumer reporting agencies regarding overdue payments allegedly owed by

21   Plaintiff that were related to their QWR.

22        163.    As a result of Defendants BACHL's, America's Wholesale's, and CB's failure to

23   comply with RESPA, Plaintiff has suffered and continues to suffer damages and costs of suit.

24   Plaintiff is entitled to recover statutory damages, actual damages in an amount to be determined at

25   trial, and costs and reasonable attorneys' fees.

26   ///

27   ///

28   ///

**NINTH CAUSE OF ACTION**

**VIOLATION OF TRUTH IN LENDING ACT**

**15 U.S.C. § 1601 et seq.**

**(Against Defendants America's Wholesale and CB)**

164.    Plaintiff incorporates here each and every allegation set forth above.

165.    The Loan transactions at issue is a consumer credit transaction subject to the provisions of TILA.

166.    In the course of the transaction described herein, Defendant America's Wholesale and CB violated TILA by failing to provide required disclosures prior to consummation of the transaction as required by 15 U.S.C. § 1638, failed to make required disclosures clearly and conspicuously in writing as required by 15 U.S.C § 1632(a), 12 C.F.R § 226.5(a)(1), failed to timely deliver to Plaintiff TILA notices as required by 15 U.S.C. § 1638(b), and failed to disclose all finance charge details, the annual percentage rate based upon properly calculated and disclosed finance charges and amounts financed as defined by 15 U.S.C. § 1602(u).

167.    Here, Defendants America's Wholesale and CB failed to provide Plaintiff with any disclosures prior to closing that would have allowed Plaintiff to review the terms of these loans. At closing, Plaintiff was presented with an approximately 3/4" thick stack of documents with various tags noting where to sign and where to initial.  Plaintiff was not given time to review these documents, simply told by the notary to sign here and initial there.  Copies of the sign documents were not given to Plaintiff at closing or sent to him at anytime later. The documents were not explained to the Plaintiff by the notary.

168.    Had Defendants America's Wholesale and CB properly and fully disclosed the terms of these loans pursuant to TILA, Plaintiff would not have agreed to enter into these loan transactions or would have sought loans with more favorable terms elsewhere.

169.    The facts surrounding these loan transactions were purposefully hidden to prevent Plaintiff from discovering the true nature of the transaction and the documents involved therein. Facts surrounding this transaction continue to be hidden from Plaintiff to this day.  The facts herein were all discovered by the Plaintiff within the past year, such that any applicable statute of

1  limitations are extended or should be extended pursuant to the equitable tolling doctrine or other

2  equitable principles.

3      170.    TILA grants consumers a three-day right to cancel certain residential mortgage

4  loan transactions.  Pursuant to 15 U.S.C. § 1635(a), the three-day cancellation period begins upon

5  the latter of the following events: (1) the "consummation of the transaction"; (2) the "delivery of

6  the information and rescission forms" required by that section; or (3) delivery of accurate

7  "material disclosures" required by TILA.  (15 U.S.C. § 1635(a).)  The "material disclosures" that

8  must be provided to the consumer include accurate disclosure of the annual percentage rate, all

9  finance charges and the amount financed.  (15 U.S.C. § 1602(u).)

10      171.    If the required notice of cancellation is not provided, or if the required "material

11  disclosures" are not delivered, then the right to cancel extends to three years after the date of the

12  loans, or if the facts of the transaction were hidden from the consumer, three years from the date

13  consumer discovered the hidden facts.  (15 U.S.C. § 1635(f).)  If a consumer has the right to

14  rescind against a creditor, the right will also apply to any assignees of that creditor.  (15 U.S.C. §

15  1641©.)

16      172.    A consumer may exercise their right to cancel a transaction by delivering a written

17  notification of the consumer's intent to rescind to the creditor's place of business.  (12 C.F.R. §

18  226.23(a)(2).)  The consumer's notice to rescind is effective upon mailing.  The notice mailed to

19  the agent servicing these loans are effective notice on the holder of the mortgage.  (12 C.F.R. §

20  226.23(a)(2).)

21      173.    When a consumer rescinds a mortgage transaction, the security interest giving rise

22  to the right of rescission becomes void and the consumer is not liable for any amount, including

23  any finance or other charge.  (15 U.S.C. § 1635(b).)

24      174.    Within twenty (20) days after the receipt of a consumer's election to cancel the

25  transaction, the creditor must return to the consumer all money or property given, including all

26  interest and finance charges paid, and shall take all action necessary or appropriate to reflect the

27  termination of any security interest created under the transaction.  (15 U.S.C. § 1635(b); 15 C.F.R.

28  § 226.23(d).)

175.    Defendants America's Wholesale and CB is a "creditor" as that term is defined by 15 U.S.C. §1602.  The transactions between Plaintiff and Defendants America's Wholesale and CB were consumer loan transactions wherein Defendants America's Wholesale and CB extended credit to the Plaintiff, and such credit was secured by an interest purportedly held by Defendants America's Wholesale and CB in the Property.

176.    As a consumer credit transaction, Defendants America's Wholesale and CB was required to provide Plaintiff with the mandatory TILA disclosure statements and the notice of the Plaintiff's right to rescind, specifying the date on which the three-day rescission period expires.

177.    Pursuant to Regulation Z, 12 C.F.R. § 226.23(a)(3), Plaintiff has a continuing right to rescind these loan transactions for up to three years after consummation of the transaction pursuant  to 15 U.S.C. § 1635(a) and (f) and 12 C.F.R. § 226.23(b)(5).  Plaintiff hereby gives notice of rescission by and through this Complaint.  Plaintiff will be willing and able to tender once the true holder of the Notes and Deeds of Trust has been identified and the reciprocal amounts owed between Plaintiff and Defendants have been determined.

178.    In the course of the transaction described herein, Defendants America's Wholesale and CB violated TILA by failing to provide required disclosures prior to consummation of the transaction as required by 15 U.S.C. § 1638,  failed to make required disclosures clearly and conspicuously in writing as required by 15 U.S.C § 1632(a), 12 C.F.R § 226.5(a)(1), failed to timely deliver to Plaintiff TILA notices as required by 15 U.S.C. § 1638(b), and failed to disclose all finance charge details, the annual percentage rate based upon properly calculated and disclosed finance charges and amounts financed as defined by 15 U.S.C. § 1602(u).

179.    Defendants America's Wholesale and CB is liable to the Plaintiff in the amount of twice the finance charge, actual damages to be established at trial, and costs in accordance with 15 U.S.C. § 1640(a).

180.    Plaintiff is also entitled to the following: rescission of these loan transactions; an order requiring Defendants to take any and all actions necessary to terminate any security interest in the Property, and a declaration by the Court that the security interest is void; expungement of any and all foreclosure instruments, including but not limited, to any Notice of Default or Notice

of Trustee's Sale relating to Plaintiff's Property from any public record; removal of any and all derogatory information reported to any and all credit reporting agency or bureau relating to the transaction involved herein; the return to the Plaintiff of any money given by the Plaintiff to any of the Defendants in connection with these loan transactions; statutory damages; costs and reasonable attorney's fees; and such other relief as the Court may deem just and proper.

181.    As a result of Defendants America's Wholesale's and CB's conduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, which he is entitled to recover.

182.    As a result of Defendants America's Wholesale's and CB's conduct, Plaintiff is entitled to declaratory and injunctive relief preventing Defendants America's Wholesale and CB from taking any action to collect on these loans, and/or to foreclose upon the Property, and/or to transfer the Property.

## TENTH CAUSE OF ACTION

## WRONGFUL FORECLOSURE

### (Against Defendants BACHL and Recontrust)

183.    Plaintiff incorporates here each and every allegation set forth above.

184.    California Commercial Code § 3301 specifically identifies the persons who are entitled to enforce a security interest by, among other means, instituting a foreclosure sale under a deeds of trust. The statute is exclusive rather than inclusive in nature, and those who are not identified do not have the right to enforce such an interest.

185.    Defendants BACHL and Recontrust were not, and are not, beneficiaries, assignees or employees of the person or entity who is otherwise entitled to payment.  Defendants BACHL and Recontrust are not "person[s] entitled to enforce" the security interest on the Property, as that term is defined in Commercial Code § 3301.

186.    Accordingly, Defendants BACHL and Recontrust are not entitled to utilize California Civil Code § 2924 et seq. (California's non-judicial foreclosure scheme) to wrongfully convert Plaintiff's Property.

187.    In the Notice of Trustee Sale, Defendant Recontrust claims that it was the duly

appointed Trustee pursuant to the Deeds of Trust but fails to identify the holder of the beneficial interest. None of the Defendants are not in possession of the Notes and, accordingly, none are not entitled to enforce the security interest on the Property.

188.    Given that none of the named Defendants ever acquired a right to enforce the Notes and Deeds of Trust due to defective transfers in this case, Defendants BACHL and Recontrust did not have the right to commence foreclosure proceedings and as a result recorded defective Notices of Default and Notices of Trustee's Sale, in direct violation of the requirements set forth in California Civil Code § 2923.5. As a result, Plaintiff could not exercise their rights to investigate the circumstances of the foreclosure proceedings.

189.    Defendants BACHL's and Recontrust's failure to comply with the statutory requirements denied Plaintiff the opportunity to exercise his statutory rights, which the statute was specifically designed to protect.

190.    As a direct and proximate result of said Defendants' wrongful actions, Plaintiff has suffered damages, including, but not limited to, direct monetary loss, consequential damages, and emotional distress.

191.    In committing the wrongful acts alleged herein, said Defendants acted with malice, oppression and fraud. Said Defendants' willful conduct warrants an award of exemplary damages, in an amount sufficient to punish the wrongful conduct and to deter such misconduct in the future.

## DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES

Plaintiff Jose Cortez demands a trial by jury.

WHEREFORE, Plaintiff prays for judgment and order against Defendants, as follows:

1.    That judgment be entered in Plaintiff's favor and against Defendants, and each of them;

2.    For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

3.    For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them, from collecting on the subject Loans and from causing the Property to be sold, assigned or transferred to a third

1    party;

2    4.    For an order stating that Defendants engaged in unfair business practices;

3    5.    For damages, disgorgement, and injunctive relief under California's common and

4    statutory law of unfair business practices;

5    6.    For compensatory and statutory damages, attorneys' fees and costs according to

6    proof at trial;

7    7.    For exemplary damages in an amount sufficient to punish Defendants' wrongful

8    conduct and deter future misconduct;

9    8.    For such other and further relief as the Court may deem just and proper.

10

11    DATED: December 30, 2009

12                                    Respectfully submitted

13                                    /s/ Catherine King
                                      CATHERINE KING
14                                    Attorney for Plaintiff Jose Cortez

15

16

17

18

19

20

21

22

23

24

25

26

27

28